UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
STRIKE 3 HOLDINGS, LLC,                                         :
                                                                :    Case No. 1:18-cv-04383-GHW
                                   Plaintiff,                   :
                                                                :
                     vs.                                        :
                                                                :
JOHN DOE subscriber assigned IP address                         :
68.174.142.48,                                                  :
                                                                :
                                   Defendant.                   :
---------------------------------------------------------------X

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

i

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTS ............................................................................................................................. 2

    A.  Plaintiff Has a Serious Problem with BitTorrent Infringement .................................. 2

    A.  Legal Standard Governing Expedited Discovery Requests To Identify An
        Anonymous Defendant ................................................................................................ 4

    B.  There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its
        Subpoena ..................................................................................................................... 6

        1.  Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright
            Infringement ...................................................................................................... 6

        2.  Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That
            Is Necessary to Serve Doe Defendant ............................................................... 7

        3.  There Are No "Alternative Means" to Uncover Doe Defendant's True Identity ... 8

        4.  The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement
            Claim ................................................................................................................. 9

        5.  Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's
            Interest in Protecting Its Copyrights from Mass BitTorrent Infringers .................. 9

    C.  Plaintiff Has Filed a Notice of Related Cases Pursuant to Local Civil Rule 1.6(a) ... 10

    D.  Protective Order ........................................................................................................ 10

IV.  CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITITES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) .................................... 7
*Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) .............................................. 5, 6, 9
*Ayyash v. Al-Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005) ..................................................... 5
*Digital Sins, Inc. v. John Does 1-245*, No. CV 11-8170 CM,
 2012 WL 1744838 (S.D.N.Y. May 15, 2012) ............................................................................ 10
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ............................................. 6
*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) ..................................... 7, 8
*Malibu Media, LLC v. Doe*, No. CV 14-4808 (JS) (SIL),
 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) ............................................................................... 7
*Malibu Media, LLC v. Doe*, No. CV 15-3504 JFB (SIL),
 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016) ....................................................................... 9, 10
*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*,
 No. CV 1:16-02462 AJN, 2016 WL 2894919 (S.D.N.Y. May 16, 2016) ................................... 5
*Next Phase Distribution, Inc. v. John Does 1-27*,
 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012) ................................................................................... 9
*Patrick Collins, Inc. v. John Doe*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ............................. 7
*Sony Music Entertainment Inc. v. Does 1-40*,
 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................................ 5, 7, 9
*Strike 3 Holdings, LLC v. John Doe*, No. CV 3:17-1680 CSH,
 2017 WL 5001474 (D. Conn. Nov. 1, 2017) ............................................................................ 6, 8
*UN4 Prods., Inc. v. Doe*, No. CV 17-3278 PKC (SMG),
 2017 WL 2589328 (E.D.N.Y. June 14, 2017) ..................................................................... 6, 8, 10
*United States v. Ulbricht*, 858 F.3d 71, 84, 97 (2d Cir. 2017) ........................................................ 9

**Statutes**

17 U.S.C. § 106(1) ........................................................................................................................... 7
17 U.S.C. § 410(c) ........................................................................................................................... 6

**Other Authorities**

8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed.
 2011) ............................................................................................................................................ 5
*American Registry for Internet Numbers Number Resource Policy Manual* ................................. 8
*Beginner's Guide to Internet Protocol (IP) Addresses* ................................................................. 8
Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017),
 https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview ................ 1
Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
 Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United

States House Of Representatives, (January 2011) at
http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
pornography-and-other-internet-crimes.pdf ................................................................................ 2

**Rules**

Fed. R. Civ. P. 26(d)(1) ............................................................................................................. 1, 5
Fed. R. Civ. P. 26(f) ...................................................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

## I.  INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites.[1] Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Greg Lansky, attached hereto as Exhibit "A."[2]

Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content. IPP discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. Strike 3 only knows Defendant by his or her IP address. Strike 3's independent forensic expert, John S. Pasquale, reviewed the evidence captured by IPP and confirmed Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP. *See generally* Declaration of John S. Pasquale, attached hereto as Exhibit "C."

This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Spectrum (Time Warner Cable) so that Plaintiff may

---

[1] *See generally* Declaration of Greg Lansky, attached hereto as Exhibit "A."
[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017), https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

1

learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II. FACTS

### A. Plaintiff Has a Serious Problem with BitTorrent Infringement

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS") the parent company that owns Strike 3. *See* Exhibit "A" at ¶ 1. Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through the brands' sites and the trademarks to each of the brand names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

Mr. Lansky is the Chief Creative Officer of the Blacked, Blacked Raw, Tushy, and Vixen adult brands. *Id.* at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.*

---

[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

It was a difficult start – Mr. Lansky could barely speak English, and he had trouble making connections and finding employment. *Id.* at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id.* at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id.*

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id.* at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id.* at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality adult films. *Id.* at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the industry. *Id.* at ¶ 15.

Because of this, Strike 3's brand's websites have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, and these websites enjoy a loyal following. *Id.* at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 19. Mr. Lansky himself has also won "director of the year" three years in a row. *Id.*

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id.* at ¶ 22. To continue to provide value for members, exciting and

inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights.  *Id.* at ¶ 29.

      B.     <u>Plaintiff Brings Its Litigation in Good Faith</u>

Strike 3 is mindful of the nature of the litigation and its goal is to not embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent.  *Id.* at ¶ 28.  Therefore, Strike 3 only files strong cases against extreme infringers.  *Id.* at ¶ 29.  Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content.  *Id.*  All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library.  *Id.*  Moreover, Strike 3 does not seek settlements unless initiated by defendant or defendant's counsel.  *Id.* at ¶ 30.  Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint.  *Id.*  Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so.  *Id.* at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  *Id.* at ¶ 32.  This litigation, or any litigation instituted by Strike 3, is not a business model.  *Id.*  Instead, Strike 3's goal is to deter piracy and redirect the infringement back into legitimate sales.  *Id.*  Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees.  *Id.*

**III. ARGUMENT**

      A.    <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

"Though parties generally may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f), courts may in some instances order earlier

discovery." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). "[A] party may engage in discovery before such a conference pursuant to court order." *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. CV 1:16-02462 AJN, 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016) (citing Fed. R. Civ. P. 26(d)(1). "Courts in this district have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." *Id.* (citing *Ayyash v. Al-Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005); *see* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

The Second Circuit has noted that in John Doe proceedings, "identification of the alleged infringers was indispensable for the vindication of plaintiffs' copyright[s]" and that information was not available "through alternative means." *Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) (agreeing with the findings of the magistrate judge and denying Doe defendant's motion to quash plaintiff's subpoena). The *Arista* court adopted Judge Chin's five-factor analysis for good cause in *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004):

> [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

604 F.3d at 119 (quoting *Sony Music*, 326 F.Supp.2d at 564–65). This analysis has become the standard in BitTorrent copyright cases. *See UN4 Prods., Inc. v. Doe*, No. CV 17-3278 PKC

(SMG), 2017 WL 2589328, at *1 (E.D.N.Y. June 14, 2017) (collecting cases).  Plaintiff has good cause for such expedited discovery. *See Strike 3 Holdings, LLC v. John Doe*, No. CV 3:17-1680 CSH, 2017 WL 5001474 (D. Conn. Nov. 1, 2017) (finding Plaintiff had established good cause after weighing all five factors).

    B. <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena</u>

        *1. Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol";  and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office or have complete applications pending. *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 31–33.  Plaintiff's prima facie allegations of infringement are attested to by Plaintiff's investigator, IPP International U.G.'s employee, Tobias Fieser.  *See* Declaration of Tobias Fieser, Exhibit "B."  Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works.  *See* Declaration of Susan B. Stalzer, Exhibit "D."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *Arista Records LLC*, 604 F.3d at 117 (quoting *A&M Records, Inc. v.*

6

*Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). Plaintiff's Complaint alleges that Doe Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 39.

Courts in this district have previously noted that a "[p]laintiff has made a concrete, prima facie case of copyright infringement by . . . alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *Malibu Media, LLC v. Doe*, No. CV 14-4808 (JS) (SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016). Judge Chin, too, in his seminal case, found that "the use of P2P systems to download and distribute copyrighted music has been held to constitute copyright infringement." *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565–66 (collecting cases). "Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address." *Patrick Collins, Inc. v. John Doe*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) (discussing the sufficiency of the complaint under Rule 12(b)(6)).

    2. *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

Plaintiff's Subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address . . . ." *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012). The subscriber's identity and address have been described by courts as "highly specific," *Malibu Media*, No. CV 14-4808 (JS) (SIL), 2016 WL 4574677 at *6 (collecting cases), as "Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims." *UN4 Prods.*,

7

No. CV 17-3278 PKC (SMG), 2017 WL 2589328 at *3 (citation omitted).

       3.   *There Are No "Alternative Means" to Uncover Doe Defendant's True Identity*

At this early stage in litigation, Plaintiff has only a limited view into Defendant's true identity, only having access to the offending IP address. People using the internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[4]  ISPs' records "are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn, for example, that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense."[5]  Since there is no public registry of what IP addresses correspond to which subscribers, Plaintiff's subpoena is necessary to advancing litigation. "[T]he only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address [is Defendant's ISP.]" *See* Exhibit "C"; *cf. Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *4 (citation omitted).

There is simply no alternative means by which Plaintiff can identify Doe Defendant absent the present subpoena. Indeed, "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address." *John Wiley & Sons, Inc.*, 284 F.R.D., at 190; *see also UN4 Prods.*, No. CV 17-3278 PKC (SMG), 2017 WL 2589328 at *3 ("BitTorrent's appeal to potential infringers is the large degree of anonymity it provides users."). The ISP is the only entity that can correspond a subscriber's identity with his or her IP address, and since Plaintiff "cannot identify [Doe Defendant] without a court-ordered subpoena, . . . there is good

---

[4] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[5] Statement from Jason Weinstein, n.2, *supra*.

cause to allow for early discovery." *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012).

### 4. The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim

As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first ascertaining the subscriber's identity from his or her ISP. Judge Chin framed this factor aptly: "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't Inc.*, 326 F. Supp. 2d, at 566. Plaintiff has a strong claim, indeed, *Arista* noted that the "the fundamental copyright principles are clear." *Arista Records LLC*, 604 F.3d at 117. All that stands in the way of the merits at this point, is effectuating service. *See Malibu Media, LLC v. Doe*, No. CV 15-3504 JFB (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) ("Without learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim.") (citation omitted).

### 5. Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers

The Second Circuit has found subscribers do not have a "legitimate privacy interest" in their IP address. *United States v. Ulbricht*, 858 F.3d 71, 84, 97 (2d Cir. 2017) (agreeing with the majority trend in Circuit Courts of Appeals); *see also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566–67 (noting Plaintiffs are "entitled to discovery in light of" this minimal interest), while Plaintiff's central need for the subpoenaed for information, combined with its strong claim, substantially favors good cause. *See Arista Records, LLC*, 604 F.3d at 124 (finding Doe Defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement."). The jurisprudence in *Sony* has been adopted through the Second

9

Circuit and "courts have recognized that ISP subscribers have a minimal expectation of privacy in the sharing of copyrighted material." *UN4 Prods.*, No. CV 17-3278 PKC (SMG), 2017 WL 2589328 at *3 (quotations omitted) (collecting cases); *see also Rotten Records, Inc. v. Doe*, 108 F. Supp. 3d 132, 134 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest.").

### C. Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See e.g.*, *Malibu Media*, No. CV 15-3504 JFB (SIL), 2016 WL 4444799 at *2 ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed."). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 06/18/2018                                      Respectfully submitted,

By: ___/s/  *Jacqueline M. James*
Jacqueline M. James, Esq. (1845)
The James Law Firm, PLLC
445 Hamilton Avenue
Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjameslaw@optonline.net
*Attorneys for Plaintiff*